GODFREY PLANTE *et al. vs.* THE CONKLIN LIMESTONE COMPANY, INC. *et al.*

JULY 24, 1958.

PRESENT: Condon, C.J., Roberts, Andrews, Paolino and Powers, JJ.

POWERS, J. This bill in equity was brought pursuant to the provisions of public laws 1940, chapter 938, as amended, now general laws 1956, chapter 34-16, to affirm and quiet title of the complainants to certain real estate located in the town of Lincoln and to discharge the claim of the right to quarry limestone thereon by the respondent The Conklin Limestone Company, Inc., hereinafter called the company. The cause was heard in the superior court on bill, answer and proof and resulted in the entry of a decree granting the prayers of the complainants. The cause is before us on the company's appeal from such decree.

The cause was originally heard March 26, 1956 and on June 13, 1956 the trial justice filed a rescript containing a finding for complainants and calling for appointment of a guardian *ad litem* or attorney for those in the military service and for unknown respondents. On June 25, 1956 Archibald B. Kenyon, Jr. was appointed as attorney for those in the military service and guardian *ad litem* for unknown persons.

On June 27, 1956 the trial justice entered a decree granting the prayers of complainants following which the company filed a motion to vacate the final decree, which motion was granted on July 30. Thereafter a motion for a rehearing was granted on October 30 without objection and the cause was subsequently reheard on November 30, 1956. On February 8, 1957 the trial justice filed his rescript, and a final decree in favor of complainants was entered on March 5, 1957.

The company duly appealed therefrom and gave as its reasons:

"First: The said decree is against the law.

Second: That said decree is against the evidence and the weight thereof.

Third: That said decree is against the law and the evidence and the weight thereof.

Fourth: That the decree is not in conformity with the findings of the Trial Justice.

Fifth: That the decree is in error in stating that the complainants are owners in fee simple in view of the established reservation of mineral rights by Jeremiah Smith.

Sixth: That unknown respondents in military service were not adequately protected by the guardian ad litem during the course of the hearing.

Seventh: That the Court erred in not denying and dismissing the Bill of Complaint."

The record discloses the following pertinent facts. The complainants, husband and wife, purchased the tract of land in controversy from Mabel R. Easton on September

21, 1954 by warranty deed. Her title had been acquired through mesne conveyance from George F. Aldrich who had acquired it on December 8, 1854. In none of the conveyances from George F. Aldrich down to complainants in this action is there any reservation of mineral or limestone quarrying rights. In 1853 Simon Aldrich 2nd died intestate in Smithfield and the probate court of that town appointed commissioners to survey the real estate of the deceased for the purpose of partition among the heirs and setoff of widow's dower. The conveyance of December 8, 1854 previously mentioned was made by the probate commissioners after the adoption of their report by the probate court, and is designated as "Lot No. 1" on the commissioners' plat.

The complainants introduced in evidence as exhibit A a copy of the plat surveyed for the probate commissioners which shows thereon as "Lot No. 1" four certain parcels of land, one of which contains 22 acres. It further shows a separate parcel designated "Jointa Lime Rock Hole &c." which is bounded on the east by the westerly line of the Louisquisset Pike and otherwise is completely surrounded by the parcel containing 22 acres.

The company's exhibit 5 is a conveyance from George F. Aldrich to Emily H. Shaw dated January 6, 1894 designating therein the property conveyed as the above-mentioned four parcels of "Lot No. 1" as shown on the commissioners' plat and reciting the acquisition of title by him from the commissioners' deed. The company's subsequent exhibits traced the title of the parcel containing 22 acres down to complainants.

On March 20, 1809 Jeremiah Smith conveyed approximately 44 acres to Simon and Winsor Aldrich with the following exception and reservation: "Always Excepting and Reserving to myself my heirs & Assigns forever, all the Right Title & Interest I have Or Ought to have in and to the lime rocks, lime Kiln & lime House on said Premises, with Liberty to pass to & from them with Teams & Other-

wise Where it may be most convenient with doing least Damage for the purpose of Diging [sic] said lime rocks and carrying them away & Liberty around said lime Kiln & lime House to lay wood & Stone to burn lime and to Rebuild & Repair Said Lime Kiln & lime house."

Edward L. Singsen testifying as a real estate expert for complainants was unable to say whether or not the 22 acres which are the subject matter of this litigation were a part of the 44 acres conveyed by Jeremiah Smith to Simon and Winsor Aldrich. Ambrose Aylward, counsel for the company, who testified as a real estate expert gave as his opinion that complainants' property was included in the Jeremiah Smith conveyance. In any event the trial justice found as a fact that the 22 acres were so included in that conveyance, and complainants concede in their brief that such is the case.

Since all parties to the controversy are in agreement with this finding by the trial justice, we have not thought it necessary to make an independent study of the exhibits and transcripts in this regard other than was essential for a proper understanding of the problem. It follows that any property right of the company must flow from the reservation made by Jeremiah Smith in his conveyance to Simon and Winsor Aldrich on March 20, 1809. The will of Jeremiah Smith was admitted to probate on September 26, 1818 and by the tenth clause he provided: "I give & devise to five of my sons namely Jeremiah Smith Obadiah George, Willard & Edward all the right title & Interest I have in & unto the lime Kiln lime House & Lime rock to them & their heirs & assigns forever in Equal shares." This is the only reference to limestone, lime kiln, etc. contained in his will and obviously relates back to the reservation in the conveyance to Simon and Winsor Aldrich.

On January 4, 1848, Thomas Mann, Jeremiah Smith, George Smith 2nd, Edward Smith, Lyman Smith and Huldah Smith, and on January 6, 1848 Rachel Smith and

Mowry Smith executed and acknowledged a deed convey-
ing to the Harris Lime Rock Company and its assigns
forever the following described property: "* * * all our
right title and interest in and to a certain Ledge of Lime
Rock situate in said Smithfield called the 'North Hill Ioin-
ta Ledge' with all our right, title and interest in and to
the Two Lime Kilns and Lime Houses situate near said
ledge, and all our other rights and privileges thereunto
belonging. Also all our right, title and interest in and to
the Lime Kiln situated a little southerly of the dwelling
house of Simon Aldrich 2nd in said Smithfield called the
'Aunt Anna Kiln' with all the privileges and appurte-
nances thereunto belonging."

The company's counsel and real estate expert Ambrose
Aylward testified: "Now turning to the deed, quit claim
deed from Thomas Mann, et al, to Harris Lime Rock
Company, dated January 4, 1848, and recorded in the
office of the Town Clerk in Smithfield, at book 25 at page
188, I found that with the exception of Thomas Mann,
all the grantors were either children or grandchildren of
Jeremiah Smith. Of the five children, Jeremiah, George
and Edward are grantors in the deed. Obadiah had died,
and he had left his widow Holda [Huldah] Smith, a son
Lyman Smith, who was of age, and a minor son Obadiah,
that would be Obadiah Jr. Holda [Huldah] Smith signed
this deed, and Lyman Smith signed it."

The expert witness for complainants, Edward L. Sing-
sen, when asked: "Well, at least you are satisfied that
three of the grantors are three of the sons to whom the
lime rock was left in the 10th clause of Jeremiah Smith's
will?" replied: "They might well be, they had the same
names, the same first names."

The trial justice made no reference to the contention of
counsel for the company, which was not contradicted by
complainants, that the Jeremiah Smith, George Smith 2nd,
and Edward Smith who joined in the conveyance to the

Harris Lime Rock Company, respondent's exhibit 9, were three of the sons mentioned in the will of Jeremiah Smith. The conclusion reached by the trial justice, however, indicates that he was convinced such was the case and we cannot disagree with his conclusion.

On March 16, 1848, James Phetteplace, guardian of the person and estate of Obadiah Smith, a minor, conveyed to Harris Lime Rock Company the following: "* * * all the said Obadiah Smith minor's interest in the North Hill Iointa Ledge of Lime Rock and in the two Lime Kilns and Lime Houses situate near said Ledge in Smithfield, and also of certain rights in the 'Aunt Anna Kiln' (so called) in Smithfield." This conveyance was approved by the Smithfield probate court on March 25, 1848 and was received for record two days later. Referring to this conveyance and to the conveyance from Thomas Mann et al., the company's expert Aylward stated: "As set forth in the Bill of Complaint, there was a deed from James Phetteplace, Guardian, to the Harris Lime Rock Company, which conveyed to the Harris Lime Rock Company, all the said Obadiah Smith minor interest in the North Hill jointa ledge of lime rock. That took care of four children of the five."

He further stated: "Willard Smith, his will was recorded on probate book page 125, which was recorded July 11th, 1845 and admitted August 30th, 1845. In his will he left one-half of his real estate to his widow Rachel and the rest and residue to his son Mowry. Rachel and Mowry signed this deed." He also stated: "So all the children of Jeremiah and wife of Jeremiah Smith, to which children had been left all the lime rock rights, they all joined in this deed conveying all their right, title and interest in the lime rock rights inherited from their father under his will, to the Harris Lime Rock Company, and the deed which is in evidence from the Harris Lime Rock Company to the Conklin Limestone Company conveys specifically certain

properties, but then there is another clause which I pre-sume was placed therein for the purpose of including all that might have been omitted, and that clause is to the effect that all right, title and interest in the lime rock that Harris Lime Rock Company might own, are conveyed to the Conklin Limestone Company." This is the company's testimony. It stands uncontradicted and there is nothing in the record which suggests that it is not correct.

The company bases its claim of a right to quarry lime-stone on the property of complainants by virtue of a con-veyance made to it by the Harris Lime Company September 10, 1946 and which was duly recorded in the town clerk's office in Lincoln September 18, 1946. The perti-nent provisions of this conveyance, the company's exhibit 1, are as follows:

"A certain tract of land, with all the buildings and other improvements thereon, and comprising five (5) acres, more or less, situated near the Village of Lime-rock, in the Town of Lincoln, bounded on the north and east by land now or formerly of David Wilbur, and on the south and west by land now or formerly of the Harris Lime Rock Co., the tract hereby described comprising all of the 'Middle Hill Ledge' of lime rock, near said Village of Limerock, including that portion formerly owned by the Harris Lime Rock Co. more fully hereinafter described.

Also that certain parcel of land with all the im-provements thereon, belonging to Harris Lime Com-pany, situated in said Town of Lincoln, about one thousand (1000) feet north of the Lime Rock Grange four corners, on the Louisquisset Pike, so-called, in-cluding land on the westerly side of the present Louis-quisset Pike, known as the 'North Hill Ledge' bounded on the east by said present Louisquisset Pike and sur-rounded by land now or formerly of Charles R. Easton; also land on the easterly side of said present Louis-quisset Pike bounded on the west by said present Louisquisset Pike, on the north and east by Edward F. Green estate and land now or formerly owned by Pres-

cott S. Wilbur, on the south by Wilbur Road and by land now or formerly owned by Charles R. Easton. Said tract on the easterly side of Louisquisset Pike is bisected by land now owned by the State of Rhode Island to be used in laying out the new Louisquisset Pike.

Meaning and intending hereby to describe and convey all property and property rights, quarries, quarry rights and privileges, kilns, water rights and real estate now owned by the Harris Lime Company.

Also meaning and intending to convey quarry rights on the property of Frederick Wilbur known as 'South Hill'."

The company introduced in evidence other exhibits consisting of deeds, wills and leases. The purpose of these exhibits generally was to show that all of this property stemmed originally from the farm of Jonathan Harris, but since all parties are agreed as to the correctness of the finding of fact by the trial justice that complainants' 22 acres were included in the conveyance of Jeremiah Smith these exhibits are immaterial.

The company's reasons of appeal are seven in number but the sixth reason relating to the adequacy of representation by the attorney for those in military service and the guardian *ad litem* for unknown persons has been neither briefed nor argued and is considered to have been waived. The other reasons all relate to the consideration of the evidence by the trial justice and the construction placed by him on the various exhibits, and therefore they may be considered together.

It is important to note that in the conveyances by the heirs of Jeremiah Smith of their right, title and interest in and to the limestone, etc. reserved by Jeremiah Smith in the 44 acres of which complainants' property has been established as part, the significant words are "North Hill Iointa [Jointa] Ledge." Edward L. Singsen further testifying as a real estate expert stated that in his opinion the "North Hill Jointa Ledge" reference in the conveyance

from Thomas L. Mann et al. to Harris Lime Rock Company and the area designated on the commissioners' plat as "Jointa Lime Rock hole" were one and the same. He also testified that he assumed that since the Thomas Mann et al. conveyance was in 1848 and the plat was surveyed for the commissioners in 1854, "the surveyor was familiar with the lines of that North Jointa Ledge property, and laid them out on this plat correctly."

It is significant that in the conveyance of Harris Lime Company to The Conklin Limestone Company, Inc. in 1946, following the outright conveyance of "North Hill Ledge" there appears the following: "Meaning and intending hereby to describe and convey all property and property rights, quarries, quarry rights and privileges, kilns, water rights and real estate now owned by the Harris Lime Company." The company contends that this language relates to the quarry rights it possesses in the land of complainants. If so it is difficult to understand why it was thought necessary to add the following: "Also meaning and intending to convey quarry rights on the property of Frederick Wilbur known as 'South Hill'." Certainly if the general language relied upon was sufficient to cover any right that the respondent company might have to quarry limestone on the property of another, it would not have been necessary to make special reference to the property of Frederick Wilbur. We do not believe that the general language on which the company relies vests any right to quarry on the land of complainants.

The trial justice found "that, based upon the evidence submitted, The Conklin Limestone Company, Inc. had established no right of any kind to the said land of the complainants." He found as a fact that the property deeded by the heirs of Jeremiah Smith to the Harris Lime Rock Company and through them to the respondent company was a specific tract of land constituting and containing a certain ledge known as North Hill Ledge, mentioned in

some of the deeds as the Harris North or Jointa Hill or ledge, and shown on the plat surveyed for the commissioners as the "Jointa Lime Rock hole." He reached this conclusion from the testimony of the expert witness Edward L. Singsen.

We cannot say that the trial justice was clearly wrong. The complainants' property is referred to in the conveyance from the Harris Lime Company to the respondent company as "land now or formerly of Charles R. Easton" and as completely surrounding the area conveyed to the said respondent. This is borne out by the partition plat of 1854 which in complainants' exhibit A sets forth their 22 acres which contain within them the specific ledge allegedly acquired by the respondent company.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for entry of judgment on the decree in accordance with public laws 1940, chapter 938, paragraph (F), now general laws 1956, §34-16-14.

ON MOTION FOR REARGUMENT.

NOVEMBER 20, 1958.

PER CURIAM. After our opinion herein was filed, the respondent The Conklin Limestone Company, Inc. by permission of the court presented a motion for leave to reargue on certain grounds therein set forth.

Upon consideration of such grounds, we are of the opinion that they are of sufficient importance to warrant a reargument of the case.

Motion granted.

*Charles F. Cottam,* for complainants.

*John F. Doris, Lewis Z. Lavine, Ambrose V. Aylward,* for respondent The Conklin Limestone Company, Inc.